Exhibit A

**1. What the Words Mean.** (a) "You," "your," and "yours" mean Fleet Bank, its successors and assigns; (b) "I," "me," "my" and "us" and "Borrower" means each individual who signs this Agreement, and each individual's heirs, executors and administrators; (c) "Account" means the Account subject to this Agreement; and (d) "Agreement" means this Fleet Line Agreement.

**2. Credit Limit.** My credit limit is $ 4,000,000.00 . The amount of my unpaid borrowings, interest and other charges on my Account will not exceed my credit limit. At your sole discretion, you may allow me to exceed my credit limit. If you do, I will pay you the excess amount immediately upon your request.

**3. Promise to Pay.** I promise to pay you all amounts I borrow, plus finance charges and other fees and charges under the terms of this Agreement.

**4. Line of Credit.** During the "Draw Period", I may obtain loan advances on my Account by using special checks or any other means you make available to me. Each advance will be at least $250, or the available balance of my credit limit, if less. My Draw Period starts on the day after my right to rescind this Agreement expires and continues until the last day of the billing period ending during the 59th month after the month in which I sign this Agreement. Unless the Property securing the Account is in Connecticut, at your option, the Draw Period may be renewed for up to two additional five year periods. If the Property securing the Account is in Connecticut, at your option, the Draw Period may be renewed for one additional period of a length you establish, but for not more than five years. You will notify me before the end of any Draw Period whether or not you will renew my Draw Period. After my final Draw Period, I will pay the balance I owe over a fixed term period ("Repayment Period"). During any Draw Period, you do not have to make advances on the Account when my right to borrow has been suspended (see Section 14) or terminated (see Section 15).

You will stop making advances on the Account, or limit the amount you will lend, at the written request of any of us who signs this Agreement. After such request is received, any request for a reinstatement of prior credit privileges must be in writing and signed by all of us.

I will not use my Account to purchase the property securing the Account.

**5. Security.** To secure the payment of all sums I owe you under this Agreement, and any extension, renewal or modification of the Agreement, and to secure all charges under the mortgage of the Property securing the Account, I am giving you a mortgage ("Mortgage") on my real property located at:

1 Weetamo RD Nantucket

Nantucket, MA 02554 _____ (the "Property").

The Mortgage contains additional information. I agree to comply with all the terms of the Mortgage and to reimburse you for any amounts you pay to protect the Mortgage. The Mortgage will not secure any advances or other charges in excess of my credit limit. Collateral securing other loans with you may also secure the Account. The Mortgage and the Agreement will remain in effect even though my Account balance may be reduced to zero from time to time.

**6. Annual Percentage Rate and Finance Charge.** My annual percentage rate is the highest Prime Rate most recently published under the heading "Money Rates" in *The Wall Street Journal* , plus a margin. My annual percentage rate may change once each month on the first day of each billing period. If the Prime Rate is no longer published, you will choose a comparable independent index upon which to base my rate. My maximum **ANNUAL PERCENTAGE RATE** , permitted by state law, is checked below:

| | | | | | |
|---|---|---|---|---|---|
| ☐ CT: 21% | | ☐ NH 21% | | ☐ ME: 18% | |
| ☒ MA 18% | | ☐ RI: 21% | | ☐ FL 18% | |
| ☐ NJ: 21% | | | | | |

☐ NY, and PA: The greater of: (a) 15.9% or (b) five percentage points (5%) over the annual percentage rate in effect when my Account was opened, but in no case will it exceed 25%. My annual percentage rate includes interest and no other costs.

Finance charges accrue on each advance from the date of the advance until payment is posted to my Account. You figure the finance charge on my Account as follows:

a. You take the beginning balance of my Account each day, add any new loans, and subtract payments, credits, adjustments, and unpaid finance charges. During the Draw Period (but not the Repayment Period) any charge listed in Section 8 (except a late charge) that is assessed and not paid by the payment due date shown on the monthly statement on which it is itemized, will be treated as an advance and included in the daily balance calculation beginning on the first day of the billing period that starts after that payment due date. This gives you the daily balance for

b. Next, you add up all the daily balances for the billing period and divide the total by the number of days in the billing period. This gives you the average daily balance for my Account. (If any daily balance is a credit balance, you consider that day's balance to equal zero.)

c. Then, you multiply the average daily balance times the daily periodic rate times the number of days in the billing period. This gives you the finance charge on my Account.

The daily periodic rate is calculated by dividing the annual percentage rate by 365.

My initial **ANNUAL PERCENTAGE RATE** is ____9.000____ % ( daily periodic rate of ____0.02466____ %). It is based upon a Prime Rate of ___9.50___ % and a margin of ___-0.500___ percentage points ( ___-0.50___ ) which I have selected. Except as limited by the maximum annual percentage rate, an increase in the Prime Rate as described above will result in a corresponding increase in my annual percentage rate, daily periodic rate, finance charge owed, and minimum monthly payment.

If any law is finally interpreted as limiting the finance charge or other charges collected or to be collected in connection with my Account, then: (i) any such charge will be reduced by the amount necessary to reduce it to the permitted limit, and (ii) any sums collected from me which exceed the permitted limit will be applied to the amount of principal I then owe.

**7. Closing Costs.** Before this Agreement is effective, I will pay the amounts listed below:

| | | |
|---|---|---|
| Points and Commitment .............. | $ | 0.00 |
| Document Preparation Fee ............ | $ | 0.00 |
| Mortgage Filing Fee ................. | $ | 0.00 |
| Title Examination & Certificate ..... | $ | 0.00 |
| Lender's Title Insurance ............ | $ | 0.00 |
| Property Evaluation Fee ............. | $ | 0.00 |
| Mortgage Tax ........................ | $ | 0.00 |
| Documentary Stamp Tax .............. | $ | 0.00 |
| Intangible ......................... | $ | 0.00 |
| Attorney Fee......(n/a NJ) / Closing Agent...... | $ | 0.00 |
| Flood Determination ................ | $ | |
| Notary Fee ......................... | $ | 0.00 |
| Other .............................. | $ | 0.00 |
| Total Amount Due | | |

**8. Other Charges.** Any charge listed below will be included in my minimum payment due for that billing period during which the charge was posted to my Account. During a Draw Period (but not Repayment Period), if I do not pay any such charge (except the late charge) by the payment due date, such charge will be treated as a loan and included in my daily balance beginning on the first day of the billing period starting after the payment due date.

**(a) Annual Membership Fee.** Each year during a Draw Period, I will pay the

| | | |
|---|---|---|
| ☒ CT, FL and MA: | $ 35.00 | |
| ☐ ME: | | |
| ☐ NH, NJ, NY, PA and RI: | $ 50.00 | |

If you waive the fee in any year, you may still charge a fee in subsequent years.

**(b) Late Charge.** I will pay a late charge permitted by state law, checked below:

☐ CT, FL and RI: If any payment is more than 10 days late, I will pay a late charge of $15.

☒ MA: If any payment is more than 15 days late, I will pay a late charge of $10 or 3% of the payment, whichever is less.

☐ ME: $0.

☐ NH: If any payment is more than 10 days late, I will pay a late charge equal to $10 or 5% of the payment, whichever is larger.

☐ NY, NJ, and PA: If any payment is more than 15 days late, I will pay a late charge of 2% of the payment.

- CONTINUED ON THE REVERSE SIDE -

---

By signing below, I state I received a completed copy of the Agreement. I agree to the provisions on all pages of this Agreement . If I occupy the property as my principal dwelling, I certify I have received two (2) copies of a Notice of Right to Cancel this transaction.
Executed under seal effective ___09/29/00___

Borrower: _____    Address:    75 Barnes Hill RD
Alan J. Bankart                                       Concord, MA 01742

Borrower: _____                 1 Weetamo RD
Diane K. Bankart                                     Nantucket, MA 02554

Received and accepted by Fleet Bank  By: _____    Title: AVP

(c) Early Cancellation Fee. If I ask you to close my Account within 24 months after it is opened (12 months if I am a resident of RI), I will pay you $250. This fee does not apply if I am a resident of ME, NJ, NY or PA.

(d) Credit Life Insurance. See details below.

**9. Additional Charges.** Any charge listed below will be treated as if it were a loan. It will be included immediately in my daily balance and accrue interest from the date of posting.

(a) Periodic Property Evaluation Fee. At any time when I am eligible for an extension or renewal of my Draw Period, or when you have reduced my credit limit, or suspended my right to borrow under Section 14 or terminated my Account under Section 15, you may obtain an updated evaluation of the Property to determine whether to grant the extension or renewal, to reinstate borrowing privileges, or to permit repayment in installments. I agree to pay the actual cost of such evaluation, up to a maximum amount of $500.

(b) Over Limit Fee. If you do not pay a check because it would cause me to exceed my credit limit, I will be charged $20. This fee does not apply if I am a resident of Maine, New Jersey, New York or Pennsylvania.

(c) Returned Check Fee. If a check or other instrument with which I make a payment on the Account is returned to you unpaid for any reason, I will be charged a returned check charge of $20 ($10 if I am a resident of MA, $5 if I am a resident of ME). This fee does not apply if I am a resident of NJ. You will waive this fee if my check is drawn on a Fleet Bank deposit account.

(d) Miscellaneous Fees. You may charge me additional fees for extra services such as providing research and copies of documents, other than in response to a billing error inquiry.

**10. Payment.**

(a) Draw Period. During a Draw Period my minimum monthly payment will be the sum of: (1) the finance charge accrued during the billing period; (2) other charges posted to the Account during the billing period; (3) any overdue payment; and (4) the amount of any advance in excess of my credit limit. Except for any advance in excess of my credit limit, this minimum monthly payment will not reduce the amount of principal outstanding. I will continue to make the payments described in this section until I begin to make the payments required during my Repayment Period.

(b) Repayment Period. My fifteen year Repayment Period begins at the end of my last Draw Period. I will make monthly payments during the Repayment Period equal to 1/180th of the outstanding balance of my Account at the end of the Draw Period, plus monthly finance charges, other charges and amounts past due. During the Repayment Period I may not obtain additional advances from my Account.

(c) Means of Payment. I will make my minimum monthly payment by the due date shown on my billing statement. If I do not make my minimum monthly payment by the due date shown on my statement, in the extent permitted by law, you may take the payment out of any deposit account, other than an IRA or Keogh account, that I maintain with you. I may prepay all or part of the money by paying more than the minimum monthly payment from time to time without penalty. A partial prepayment does not relieve me of my obligation to pay the amounts shown in subsequent statements.

(d) Applying Payments. Payments will be applied first to billed finance charges, then to any other charges that have not been treated as advances, then to advances accruing finance charge at preferred rates, then to all other advances, and finally to unbilled but accrued finance charges.

**11. Periodic Statement.** I will receive a billing statement which will give me information about my Account. If the Account balance shown on my statement is a credit balance and I send you a written request, or if you are required to do so by law, you will refund that amount to me promptly.

**12. Property Insurance.** I agree to name you as mortgagee on an insurance policy on the Property. The policy must be satisfactory to you. If you so require, I will maintain flood insurance on the Property. So long as this Agreement is in effect, I will maintain these policies. I may obtain these policies from anyone I choose who is acceptable to you.

**13. Re-evaluation.** At your cost, you may re-evaluate my creditworthiness and the value of the Property from time to time. Subject to applicable law, you can obtain credit information about me and exchange it, and information about the Account, with affiliates, subsidiaries and others you deem appropriate. You may also ask me to give you a new credit application and any other information that you feel you need, and I will promptly give it to you.

**14. Suspensions and Reductions of Credit Limit.** You can suspend my right to obtain advances or reduce my credit limit during any period in which any of the following is in effect:

(a) the value of the Property declines significantly below its appraised value for purposes of this Agreement;

(b) due to a material change in my financial circumstances, you reasonably believe I will not be able to meet the above payment requirements;

(c) I am in default of a material obligation under this Agreement. For example, I would be in default if I: (1) fail to make payment when due on any other loan secured by the Property from you or another creditor; (2) fail to comply with the terms of the Mortgage; or (3) fail to provide a current financial statement or any financial information you reasonably request at any time;

(d) government action prevents you from imposing the annual percentage rate provided for, or impairs your security interest such that the value of the Property is less than 120 percent of the credit line;

(e) a regulatory agency has notified you that continued advances would constitute an unsafe and unsound practice;

(f) the maximum annual percentage rate is reached; or

(g) one of the events listed in Section 15 below occurs which would permit you to

**15. Termination.** You may terminate my Account at any time if:

(a) I commit fraud or make a material misrepresentation in connection with the Account;

(b) except if the Account is secured by a junior mortgage on Connecticut property, I fail to meet the payment terms of the Agreement for any outstanding balance. If the Account is secured by a junior mortgage on Connecticut property, I will be in default if I fail to make a payment within sixty days after the due date; however, my failure to pay when due will allow you to suspend my right to borrow;

(c) my action or inaction adversely affects the Property or any right of yours in the Property, such as: my transferring title to the Property, selling the Property or failing to maintain required insurance on the Property, failing to pay taxes on the Property, some other action by me results in the filing of a lien that is or becomes senior to yours, the Property is taken by eminent domain or foreclosure by a prior lienholder;

(d) any of the following events adversely affects your rights in the Property: (1) a judgment is filed against me; (2) I commit waste or fail to maintain the Property; (3) my illegal use of the Property subjects it to seizure; (4) I vacate the Property; (5) except Accounts secured by Connecticut property, one of us dies (if the Account is secured by Connecticut property, the death of all of us who signed the Mortgage); or (6) a petition is filed by or against me under any bankruptcy or insolvency law. If I am one of your executive officers, you may terminate my Account if any federal law dealing with credit extended to an executive officer requires that, as a condition of the plan, the credit shall be due and payable on demand.

**16. Events After Termination.** Subject to applicable law and without notifying me, if you terminate the Account, you may do one or more of the following: (a) immediately close my Account; (b) return without paying any outstanding checks drawn on my Account; (c) require me immediately to pay the entire outstanding balance of my Account; (d) require me to pay the outstanding balance of my Account as provided in Paragraph 10(b) ("Repayment Period"); (e) take any of my money in your possession to pay what I owe, to the extent permitted by law; or (f) subject to applicable foreclosure procedures, foreclose the Mortgage.

**17. Collection Costs.** If I fail to abide by any of this Agreement you may use any remedy permitted by law. To the extent permitted by law, I will pay you all reasonable collection costs, including reasonable attorney's fees. If the Property is in Florida, I agree to pay, in the event of default, all costs and expenses incurred in collection or foreclosure, including attorney's fees equal to (10%) of the principal sum or such larger amount as may be reasonable and just and also all costs, expenses and attorney's fees incurred in any appellate and bankruptcy proceedings. If I am successful in any partial defense, set-off or counterclaim against you, the court may withhold payment of all or a portion of your attorney fees. New Hampshire and New York residents only: If I prevail in any action brought by you or me involving the Account, I shall be awarded reasonable attorney's fees. Pennsylvania only: If this Note is secured by real estate, I will pay all of your reasonable attorney' fees which are actually incurred in connection with foreclosure or other legal admin and up to $50 for your reasonable attorneys' fees which are actual incurred prior to commencement of foreclosure or other legal action.

**18. Delay in Enforcement.** You can delay enforcing any of your rights under this Agreement without losing those rights or any other rights. If you waive any right once, it does not mean that you must waive that or any other right later.

**19. Copies.** You can prove I owe you money by using copies of documents as if they were the originals.

**20. Obligations of Borrowers.** Even if there is more than one of us, I am individually responsible for all promises made in this Agreement. You may require me to pay all amounts due without asking another person to pay. I will pay all amounts due even if you and another person agree to revise this Agreement or release the Collateral.

**21. Tax Deductibility.** I should consult a tax advisor regarding the deductibility of interest and charges imposed on my Account.

**22. Notices.** To the extent permitted by applicable law, you will send all notices to me at the address next to my signature. To the extent permitted by law, a notice sent to one of us will be considered notice to all of us. I will notify you promptly if I change my mailing address. Except for notices related to billing errors (see "My Billing Rights"), I will send all notices and requests to you at:

> Fleet Bank
> Retail Loan Servicing
> Collateral Department
> 316-317 Court Street
> P.O. Box 5082
> Utica, NY 13502

or to such address you provide for notices.

**23. Change in Terms.** Except as otherwise provided in this Agreement, you will not change any terms of this Agreement without my written consent unless the change is insignificant or would benefit me for the remaining term of the Agreement. If you change any term of this Agreement, to the extent required by law you will give me prior written notice of the change. Unless otherwise required by law, any change in terms will apply to all amounts on the Account then outstanding and thereafter incurred.

**24. Assignment.** I may not assign this Agreement or my rights and obligations under it. At any time you may assign this Agreement and the Mortgage to another person.

**25. Applicable Law.** This Agreement is governed by the law of the state where the Property is located. To the extent that federal law preempts state law, this Agreement is governed by Federal law. If any provision of this Agreement conflicts with any existing or future law, it shall be deemed modified to the extent necessary to comply with such law and the validity of the remaining terms shall not be affected.

**26. Documentation.** I agree to execute or re-execute any document, including a revised version of this Agreement, that you request in order to correct any error or omission in the original Agreement, security instrument, or other loan documents.

- CONTINUED ON THE NEXT PAGE -

# Fleet Line Agreement (for use only in CT, FL, MA, ME, NH, NJ, NY, PA, and RI)

**Credit Insurance:** Optional credit life insurance is available to borrowers through you. Credit life insurance is available for one or two borrowers. Credit life insurance is not available and will terminate when a borrower reaches age 66

(71 in FL). Other eligibility criteria may apply. The terms of the insurance are described in the certificate of insurance.

I CANNOT BE DENIED CREDIT SIMPLY BECAUSE I CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE IS NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS I SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.

| | | | | | |
|---|---|---|---|---|---|
| Single coverage ............................ | 0.808 | /$ 1,000/month | Joint coverage ............................ | 1.292 | /$ 1,000/month |

I want the coverage initialed below:

I want single coverage.................. Initials: _____

No insurance is provided unless a coverage is initiated.

We want joint coverage................Initials _____

---

## MY BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I SHOULD NOTIFY YOU IN CASE OF ERRORS OR QUESTIONS ABOUT MY STATEMENT.

If I think my statement is wrong, or if I need more information about a transaction on my statement, I should write you on a separate sheet at the "Send Inquiries To" address listed on my statement. I will write to you as soon as possible. I understand that you must hear from me no later than 60 days after you sent me the first statement on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

1. My full name and account number.

2. The dollar amount of the suspected error.

3. I must describe the error and explain, if I can, why I believe there is an error.

If I have authorized you to pay my Fleet Line bill automatically from my checking or savings account, I can stop the payment on any amount I think is wrong. To stop the payment, my letter must reach you three business days before the automatic payment is scheduled to occur.

### AFTER YOU RECEIVE MY WRITTEN NOTICE

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the statement was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my statement that are not in question.

If you find that you made a mistake on my statement, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within 10 days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my statement. And you must tell me the name of anyone you report me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my statement was correct.

In this Notice, the words "you" and "your" mean each person who signs the Fleet Line Agreement ("Agreement") as a cosigner.

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower. The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record. This notice is not the contract that makes you liable for the debt.

---

## NEW YORK NOTICE TO COSIGNER

You agree to pay the debt incurred from time to time on the account identified below, although you may not personally receive any property, services or money. You may be sued for payment, although the person opening the account is able to pay. You should know that the Limit of Liability listed below does not include court costs or attorneys' fees, or other costs or charges that may be stated in the agreement. You will also have to pay some or all of these costs and charges if the Agreement for the consumer credit amount, payment of which you are guaranteeing, requires the borrower to pay such costs and charges.

This Notice is not the Agreement, or other writing, that obligates you to pay the debt. Read the Guaranty below for the exact terms of your obligations and of your rights to limit or end your obligations.

### IDENTIFICATION OF ACCOUNT YOU HAVE TO PAY:

Name of Creditor:    Fleet Bank

Name of Debtor: _____

Type of Account:    Mortgage Secured Line of Credit

Limit of Liability: _____

I have been given a completed copy of this Notice and of each writing that obligates me

Co-signer: _____    Date: _____

### Guaranty

To induce the bank to make this loan, each undersigned guarantor unconditionally guarantees the payment when due of all money owed under the above Fleet Line Agreement and the mortgage securing it. Each guarantor is jointly and severally liable with the borrower. This means that the bank does not have to try to collect from anyone or anyone's property before collecting from a guarantor. The bank may take any action permitted by the agreement(s) being guaranteed without notifying the guarantor or releasing the guarantor from responsibility. The guarantor will pay any expenses the bank incurs in enforcing the guaranty, including reasonable attorney's fees and court costs. The bank does not have to notify any guarantor of the bank's acceptance of this guaranty.

Each guarantor accepts the terms of this guaranty and acknowledges receipt of a

Guarantor
(Co-signer): _____

Address: _____

Guarantor
(Co-signer): _____

Address: _____

Exhibit B



000309

**Fleet**

Document No. 096863

Document No. 096863

If property is located in RHODE ISLAND:
This is an open-end mortgage to secure present
and future loans under Chapter 25 of Title 34.

If property is located in NEW YORK:
This is a Credit Line Mortgage under    Section
281 of the Real Property Law.

If property is located in PENNSYLVANIA:
This is an open-end mortgage to secure
future advances under, 42 Pa. C.S.A. 8143.

**Fleet Bank**

**OPEN-END MORTGAGE**

(for use in CT, FL, MA,
ME, NH, NY, PA, and RI)

Nantucket Registry District

APR 2 6 2002
RECEIVED FOR REGISTRATION
3 O'CLOCK 50 m P M

NOTED ON CERTIFICATE NO. 19432
IN REGISTRATION BOOK          PAGE
ATTEST Joanne L. Kelley
                                    ASST RECORDER

---

<u>Maximum Principal Sum:</u> U. S. $    4,000,000.00

<u>Maturity Date:</u> 09/29/20

At the option of the Lender the Maturity Date may be
extended to: 09/29/30

<u>Tax Parcel Identification No:</u>

**Borrower(s) / Mortgagor(s):**
Barnes Hill Limited Liability Company

**Property Address:**
1 Weetamo RD
Nantucket, MA 02554

---

THIS MORTGAGE is between each Mortgagor signing below ("Borrower") and the following Mortgage e ("Lender"):

Name of Lender: Fleet National Bank, Principally Located in Rhode Island
Lender's Address for Notices: RETAIL LOAN SERVICING
315-317 COURT STREET, P O BOX 3092
UTICA, NY 13502

BORROWER has entered into a Fleet Line Agreement ("Agreement") with Lender, dated the same date as this Mortgage, which is a consumer revolving loan agreement that provides for an open-end credit plan (as defined in the Truth in Lending Act). Under the Agreement, Borrower may obtain advances (including re-advances of any repaid principal) and is indebted to Lender for all amounts advanced and outstanding from time to time. All amounts advanced under the Agreement or this Mortgage, if not sooner paid, are due and payable at the Maturity Date. The maximum principal amount that is or may be secured by this Mortgage at any time and from time to time shall not exceed the Maximum Principal Sum shown above.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Agreement, together with interest thereon, and all renewals, extensions, and conversions of or modifications to the Agreement; the payment of all other sums provided in the Agreement or advanced to protect the security of this Mortgage, including, but not limited to, taxes, assessments, maintenance charges, insurance premiums, and other costs; and the performance of all other covenants and agreements of Borrower contained herein and in the Agreement, for consideration paid, Borrower hereby mortgages, grants, and conveys to Lender, its successors and assigns forever, with statutory power of sale (if applicable) and with mortgage covenants, the property described in Exhibit A to this Mortgage (the "Property"). This Mortgage is given on the statutory condition (except in Florida). If the Property is located in New York, Lender's rights under this Mortgage are in addition to and not exclusive of rights conferred under Sections 254, 271, 272 and 291-F of the New York real Property Law.

**PROPERTY UNDER MORTGAGE**

The Property includes: (a) all improvements erected on the Property; (b) all of Borrower's rights and privileges to all land, water, streets, and roads next to and on all sides of the Property (called "easements, rights, and appurtenances"); (c) all rents from the Property; (d) all proceeds (to the extent necessary to repay the amount Borrower owes) from the Property, including insurance proceeds and proceeds from the taking of all or any part of the Property by a government agency or anyone else authorized by law; (e) and all property and rights described above that Borrower acquires in the future.

**OWNERSHIP OF PROPERTY**

Borrower promises that: (a) Borrower lawfully owns the Property, (b) has the right to mortgage, grant and convey the Property, (c) and there are no claims or charges (called "encumbrances") against the Property, except for encumbrances disclosed to Lender.    Borrower is fully responsible for any losses Lender suffers because someone other than the Borrower has some of the rights in the Property that the Borrower claims.    Borrower will defend Borrower's ownership of the Property against any such claim of rights.

MGTFL                                                            994002031109580                                                            04/2000

000310

Borrower and Lender agree as follows:

**1.   Payment of Principal, Interest, and Other Charges.**  Borrower shall promptly pay, when due, the principal and interest indebtedness secured by this Mortgage and any other charges due under the Agreement.

**2.   Application of Payments.**  Unless otherwise provided in the Agreement or required by applicable law, all payments received by Lender shall be applied first to billed finance charges, then to other charges that have not been added to principal, then to principal, and finally to unbilled finance charges.

**3.   Prior Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage.   Borrower's shall make payments when due, and will not incur any additional indebtedness under any such mortgage, deed of trust or other security agreement.  Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property that may attain priority over this Mortgage, and any leasehold payments or ground rents. Borrower will notify all prior mortgagees of Lender's Mortgage.

**4.   Hazard and Flood Insurance.**   Borrower shall keep all  improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require.  Hazard insurance shall be  in such amounts and for such periods as Lender may require.  Borrower shall maintain coverage in an amount equal to the smallest of: (a) the amount of any obligation having priority over this Mortgage, plus the Maximum Principal Sum, or (b) the maximum insurable value of the Property. However, coverage shall never be less than the amount necessary to satisfy any co-insurance requirement contained in the insurance policy, or (c) such amount as may be required by applicable law.  If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender, provided that such approval shall not be unreasonably withheld.  All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgagee clause in favor of and in a form acceptable to Lender.  Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

**5.   Preservation and Maintenance of Property; Condominiums; Planned Unit Developments.**   Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property.  If this Mortgage is on a unit in a condominium or planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.  Borrower shall promptly pay, when due, all assessments imposed by the owners' association or other governing body of any condominium project of which the Property is a part, pursuant to the provisions of the declaration, by-laws, regulations or other constituent document of the condominium project.  As long as the owners' association or other governing body maintains a "master" or "blanket" policy on the condominium project that provides insurance coverage against fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then Borrower's obligations under paragraph 4 to maintain hazard insurance coverage on the Property is deemed satisfied and the provisions of paragraph 4 regarding application of hazard insurance proceeds shall be superseded by any provisions of the declaration, by-laws, regulations or other constituent document of the project or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect.  Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage.  In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss of the Property, whether to the unit or to common elements, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, with the excess, if any, paid to Borrower.

000311

If the Property is part of a condominium project, Borrower shall not, except after notice to Lender and with Lender's prior written consent, partition or subdivide the Property, or consent to (a) the abandonment or termination of the project, except for abandonment or termination provided by law in the case of a taking by condemnation or eminent domain; (b) any material amendment of the declaration, by-laws or regulations of the owners' association or other governing body, or equivalent constituent document of the project, including, but not limited to, any amendment that would change the percentage interests of the unit owners in the project; or (c) the effectuation of any decision by the owners' association or other governing body to terminate professional management and assume self-management of the project.

**6. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced that materially affects Lender's interest in the Property, the Lender, at Lender's option, on notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as Lender deems necessary to protect its interest. Any amounts disbursed by Lender pursuant to this paragraph 6, including amounts disbursed following foreclosure, shall become additional principal indebtedness of Borrower secured by this Mortgage and Borrower shall pay interest on such amounts at the rate in effect from time to time under the Note. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder, and any action taken by Lender hereunder shall not be a waiver of or preclude the exercise of any of the rights or remedies accorded to Lender.

**7. Inspection.** Lender may inspect the Property from time to time. Except in an emergency, Lender must first give notice specifying reasonable cause for the inspection.

**8. Condemnation.** The process of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, is hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage.

**9. Borrower Not Released; Forbearance By Lender Not A Waiver.** Extension of the time for payment or modification of any of the other terms of payment of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify the terms of payment of the sums secured by the Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**10. Successors and Assigns Bound; Joint and Several Liability; Co-Signers** . The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to the benefit of, the respective successors and assigns of Lender and Borrower. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note: (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage; (b) is not personally obligated to pay the sums secured by this Mortgage; and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear or make any other accommodations with regard to the terms of this Mortgage and the Note without the Borrower's consent and without releasing the Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**11. Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice required or permitted to be given to Borrower under this Mortgage shall be sent to Borrower by regular mail addressed to Borrower at the address for notices specified in the Agreement; and (b) any notice required or permitted to be given to Lender under this Mortgage (including notices given pursuant to Pennsylvania Consolidated Statutes Annotated, title, 42, Section 8143 or to, Rhode Island G.L. 34-25-10(b) and 34-25-11, if applicable) shall be sent to Lender by regular mail addressed to Lender at Lender's Address for Notices identified at the beginning of this Mortgage. Either party may change its address to which the other party is to send notices by giving the other party notice of the new address in accordance with this paragraph 11. Any notice provided for in this Mortgage shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed in the manner designated herein.

**12. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. Notwithstanding the foregoing, nothing herein shall limit the applicability of federal law to this Mortgage. In the event that any provision of this Mortgage or the Agreement conflicts with applicable law, the conflicting provision shall be deemed to be amended to afford the Lender the maximum rights allowed by law. No conflict with applicable law shall affect other provisions of this Mortgage or the Agreement that can be given effect without the conflicting provision and, to this end, the provisions of this Mortgage or the Agreement are declared to be severable.

**13. Borrower's Copy.** Borrower shall be furnished a conformed copy of this Mortgage at the time of execution or after recordation hereof.

**14. Events of Default.** Borrower shall be in default under this Mortgage on the occurrence of any of the following events: (a) failure by Borrower to pay when due any amount owing under the Agreement or this Mortgage if the failure continues for twenty-one (21) days after written notice of the failure is mailed to the Borrower (if the Property is located in Maine, such notice will not be sent until at least 10 days after the payment is due; if the Property is located in Connecticut, this Mortgage is subject to one or more prior mortgages, and there were loan fees, points, or other prepaid finance charges imposed in connection with the Agreement, such notice will not be sent until at least 39 days after the payment is due); (b) Borrower makes any fraudulent statement or material misrepresentation in connection with the Agreement or this Mortgage; (c) any action or inaction on Borrower's part adversely affects the Property or the Lender's rights in the Property (e.g., a transfer of title to or sale of an interest in the Property without the Lender's consent; failure to maintain insurance or pay taxes on the Property; action by the Borrower resulting in the filing of a mortgage or lien that is or becomes senior to Lender's Mortgage; action by the Borrower that jeopardizes the Lender's security for future advances; death of all individuals obligated on the Agreement; a taking of the Property by eminent domain; foreclosure by a prior lienholder; or if the Lender's security interest is adversely affected due to (i) waste, destructive use of or Borrower's failure to maintain the Property; (ii) Borrower's illegal use of the Property that subjects it to seizure; (iii) the filing of a judgment against Borrower; (iv) death of one of the joint obligors on the Agreement (except that this event of default shall not apply if the Property is located in Connecticut); or (v) Borrower's moving out of the Property and failing to return within twenty-one (21) days after written notice is mailed to the Borrower).

**15. Acceleration; Remedies.** On default, after giving notices of the availability of mortgage assistance and the right to cure as are required by applicable law and after the expiration of such time periods as are required by applicable law, Lender may declare all sums secured by this Mortgage immediately due and payable, and Lender may invoke any of the remedies permitted under applicable law, including the STATUTORY POWER OF SALE, if any. If the Property is located in Florida, Lender shall be entitled to collect all costs and expenses incurred in collection or foreclosure, including attorneys' fees equal to ten percent (10%) of the principal sum or such larger amount as may be reasonable and just, and also all costs, expenses and attorneys' fees incurred in any appellate and bankruptcy proceedings. If Lender invokes a STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage in such order as Lender may determine; and (c) the excess, if any, to the person or persons legally entitled thereto.

**16. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. On acceleration under paragraph 15 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter on, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**17. Waiver of Homestead; Dower and Curtesy , and Other Marital Rights.** When applicable, and as permitted by law, Borrower hereby waives all rights of homestead in the Property and relinquishes all rights of dower and curtesy, and all other marital rights in the Property.

**18. Release.** Until all amounts secured are paid in full and the Agreement is canceled, this Mortgage will remain in effect, even though the loan balance may be reduced to zero from time to time. This Mortgage shall be deemed to be satisfied, and Lender shall give Borrower a discharge therefor, when: (a) all sums secured by this Mortgage have been paid in full, and Borrower has paid Lender for the recording cost of filing the satisfaction of mortgage; and (b) the Lender has no continuing obligation to make additional advances.

**19. New York Lien Law.** If the Agreement and Mortgage are governed by New York law, the Borrower will receive all amounts advanced under the Agreement subject to the trust fund provisions of Section 13 of the New York Lien Law. Borrower will use any money received from Lender under the Agreement for the purpose of paying the cost of any improvements made to the Property before using the money for any other purpose.

**096863**

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien that has priority over this Mortgage to give notice to Lender, at Lender's address set forth at the beginning of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

**NOTICE TO CONSUMER: 1. Do not sign this Mortgage before you read it.**
**2. You are entitled to a copy of this Mortgage.**

IN WITNESS WHEREOF, each of the undersigned has executed this Mortgage under seal this _29th_ day of _SEPTEMBER_ (month), _2000_. WE AGREE AND ACKNOWLEDGE THAT WE HAVE RECEIVED TRUE COPIES OF THIS MORTGAGE AND ANY RIDER.

_BARNES HILL LLC  BY:_

(Signature of Witness One)
Printed Name:

_____
(Mortgagor/Borrower Signature)
Printed Name: _ALAN J. BANKART_
Barnes Hill Limited Liability Company, by Alan J. Bankart.

_____
(Signature of Witness Two)
Printed Name:

_BARNES HILL LLC  BY:_
(Signature of Witness One)
Printed Name:

_____
(Mortgagor/Borrower Signature)
Printed Name: _Diane K. Bankart_
Barnes Hill Limited Liability Company, by Diane K. Bankart.

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

_____
(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

_____
(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

STATE/ COMMONWEALTH OF _MASSACHUSETTS_, COUNTY OF _MIDDLESEX_, SS. Date: 09/29/00

Then personally appeared before me Barnes Hill Limited Liability Company, , , , known by me, (or satisfactorily proven) to be the Mortgagor(s) named in the foregoing instrument, and acknowledged the execution of such instrument for the purposes contained therein to be his/her/their (circle one) free act and deed.

**Florida Only:** The foregoing instrument was acknowledged before me this _____ day of_____, _____. by_____, who is personally known to me or has produced _____ as identification.

Printed Name and Address of
Person Who Prepared This Mortgage:

Name:
Address:
City, St Zip:

Notary Public
Print Name:
My Commission Expires:
Florida only Notary Public State of Florida at Large
Number:

[Seal]

ANASTASIA EFRATSORIS
Notary Public
Commonwealth of Massachusetts
My Commission Expires

EXHIBIT A
TO
MORTGAGE

| | | |
|---|---|---|
| **Borrower(s) / Mortgagor(s):** | Barnes Hill Limited Liabilty Company | **Date of Mortgage:** 09/29/00 |
| **Mortgagee:** | Fleet National Bank 315-317 Court Street Utica, NY 13502 | **Property Address:** 1 Weetamo RD Nantucket, MA 02554 |

The Property is located in Nantucket (city/town), Nantucket (county), Massachusetts (state) and is bounded and described as follows:

(See "Schedule A" attached hereto and made a part hereof.)

Remit all Legal Documents to:----------------------------

Fleet National Bank
Retail Loan Servicing
315-317 Court Street
P O Box 3092
Utica, NY 13502

---

## Pennsylvania Certification of Residence

I hereby certify that the precise residence of the Mortgagee, _____,
is: _____

_____
Name

_____
Title

MGTFL

04/2000

## PROPERTY DESCRIPTION
## SCHEDULE "A"

The land with buildings thereon located on
WEETAMO ROAD, NANTUCKET, NANTUCKET County,
Commonwealth of Massachusetts

as shown upon plan 22667-W
filed with certificate of title number 14422    , shown as
LOT 76
All of boundaries as stated upon Plan Number 22667-W
are determined by the Court to be located as shown upon said plan and
filed with said Certificate of Title, the same being compiled from a
plan drawn by
JOHN J. SHUGRUE, INC., SURVEYORS
dated 12/19/1988 and additional data on file in the Land Registration
Office, all as modified and approved by the Court.

Subject to and with the benefit of all easements, restrictions,
rights, conditions, reservations, rights-of-way, covenants,
provisions, orders, takings and agreements of record in so far as
the same are in force and applicable.

For a more particular description see Certificate Number 19432
Recorded at the
NANTUCKET County Registry of Deeds, Land Registration Office,
said description is hereby incorporated by reference.

For mortgagors title see deed recorded 05/09/2000 in
on Certificate 19432 as Document 89204 at the
NANTUCKET County Registry of Deeds, Land Registration Office.

BARNES HILL LLC
994002031109580
20000815047

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THAT "BARNES HILL LLC" IS DULY
FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD
STANDING AND HAS A LEGAL EXISTENCE NOT HAVING BEEN CANCELLED OR
REVOKED SO FAR AS THE RECORDS OF THIS OFFICE SHOW AND IS DULY
AUTHORIZED TO TRANSACT BUSINESS.

THE FOLLOWING DOCUMENTS HAVE BEEN FILED:

CERTIFICATE OF FORMATION, FILED THE FIRST DAY OF MARCH, A.D.
2000, AT 12 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID
CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE
AFORESAID LIMITED LIABILITY COMPANY.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE
BEEN PAID TO DATE.



*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3185602   8310

020149248

AUTHENTICATION: 1646928

DATE: 03-05-02

# Delaware

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "BARNES HILL LLC", FILED IN THIS OFFICE ON THE FIRST DAY OF MARCH, A.D. 2000, AT 12 O'CLOCK P.M.




Harriet Smith Windsor, Secretary of State

3185602  8100

020149248

AUTHENTICATION: 1646929

DATE: 03-05-02

STATE OF DELAWARE
SECRETARY OF STATE  &&  18:19 FR BINGHAM DANA LLP 17  617 951 8736 TO 913026748340    P.02
DIVISION OF CORPORATIONS
FILED 12:00 PM 03/01/2000
   001103708 - 3185602

## STATE OF DELAWARE
## LIMITED LIABILITY COMPANY

### CERTIFICATE OF FORMATION

### Barnes Hill LLC

Pursuant to the provisions of the Delaware Limited Liability Company Act, Delaware Laws, Title 6, Chapter 18 (the "Act"), the undersigned, in order to form a Delaware limited liability company, hereby certifies as follows:

1. Name of the Limited Liability Company. The name of the limited liability company to be formed hereby (the "LLC") is Barnes Hill LLC.

2. Registered Office and Registered Agent of the Limited Liability Company. The address of the registered office of the LLC in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of its Registered Agent at such address is The Corporation Trust Company.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation this ___ day of _____2-28_____, 2000.

Barnes Hill LLC

By: _____

Alan L. Bankart, Manager and Authorized
Representative

_____

Diane Bankart, Manager and Authorized
Representative

Certificate of Formation
Barnes Hill LLC

PTTDOCS:182723.1

## AFFIDAVIT

I/We, _____Barnes Hill LLC_____ the / one of

the mortgagors on the mortgage to Fleet National Bank dated _____9/29/2000___, in the

amount $ _4,000,000.00_____ securing property located at _____

_____1 Weetamo Rd, Nantucket, MA 02554_____

_____Middlesex_____ County, MA, and having personal knowledge of the

facts herein state that the mortgagor(s) in said mortgage are currently alive.

Signed under the pains and penalty of perjury, on this _____18th_____ day of

_____APRIL_____, 2002.

_____
Barnes Hill LLC by Alan J Bankart

_____
Barnes Hill LLC by Diane K Bankart

## COMMONWEALTH OF MASSACHUSSETTS

_____MIDDLESEX_____ County SS _____APRIL 18_____, 2002

Then personally appeared the above named _ALAN J. BANKART_ &

_DIANE K. BANKART_ and acknowledged the foregoing instrument to

be _THEIR_ free act and deed before me,

_____
Notary Public

My commission expires:

ANASTASIOS PAPATSORIS
Notary Public
Commonwealth of Massachusetts
My Commission Expires
June 2, 2006

Exhibit C

**Bank of America CreditLine℠ Account Modification Agreement**

BANK OF AMERICA, N.A. (THE "BANK")

Borrower Name(s) (jointly and severally, "Borrower")

**ALAN J BANKART**                                                  Date ___01/18/2006___

**DIANE K BANKART**                                                 Effective Date _____

---

**CreditLine Account Information (the "Information"):**

Current Payment Frequency ___MONTHLY___          Account Number ___6887 1002 757789___

Next Scheduled Payment Due Date ___02/13/2006___

(All capitalized terms used below have the same meaning as set forth above or in the CreditLine Agreement)

**THE CHANGES SET FORTH BELOW MAY TAKE UP TO FIVE (5) BUSINESS DAYS FROM THE EFFECTIVE DATE TO BE PROCESSED.**

**1. Background.** BANK OF AMERICA, N.A. _____ (the "Bank") is the current creditor under the Bank of America CreditLine$^{SM}$ Agreement executed by Borrower (the "Agreement"), as same may have been previously modified from time to time. As of the Date, Borrower acknowledges and agrees that the Information is correct, and the Agreement and any other document executed by Borrower (or executed on Borrower's behalf, have been properly executed and delivered to the Bank and are fully enforceable against Borrower, Additionally, Borrower acknowledges and agrees that Borrower has no counterclaims, setoffs or defenses or rights to counterclaims, setoffs or defenses to payment of the Agreement or if Borrower has any such counterclaim, setoff or defense, Borrower waives it unless prohibited by law. Any waiver of jury trial and/or consent to jurisdiction previously executed between any Borrower or guarantor who signed, endorsed or guaranteed the Agreement shall unconditionally be fully effective and shall fully extend to this CreditLine Account Modification Agreement (this "Modification") and any document executed in conjunction herewith.

**2. Request and Agreement.** Borrower requests, and the Bank agrees, for good and valuable consideration, which receipt is acknowledged, to modify the Agreement only as shown below. If not modified below, all other terms and conditions of the Agreement remain the same. Borrower and the Bank enter into this Modification as of the Date, with all modifications to be effective as of the Effective Date unless otherwise shown below. This Modification is not a novation, release or waiver of any right by the Bank. The Bank is authorized to modify any automatic payment schedule or amount, if applicable, to conform to this Modification.

**[Only check the provisions modified. If a provision is not checked, that provision is not modified.]**

A. [X]  **Block or Close the Account.** Borrower requests that the Bank:

    [ ]  Block the Account to further Advances (but do not close the Account)

    [X]  Block the Account to further Advances and close the Account when the Outstanding Balance is paid down to zero

Description of request: ___JOINT OWNER REQUEST___

If the CreditLine Account is either a Premium CreditLine, a Premium CreditLine-OD Secured or a Premium CreditLine Marketable Securities and the current payment option is "Interest only", then the following applies:

    [X]  If the Account is blocked (but not closed), then the Bank may immediately or at anytime thereafter (if the Account is still blocked) change the payment option to the "Percentage (%) of Outstanding Balance" option.

    [X]  If the Account is blocked (and is to be closed), then the payment option is changed to the "Percentage (%) of Outstanding Balance" option as of the block Effective Date.

B. [ ]  **Unblock the Account.** Borrower requests the Account be unblocked to allow further Advances (must be signed by all Borrowers). Depending on the reason(s) the Account was blocked, the Bank reserves the right not to unblock the Account and will notify Borrower accordingly. **[Note mailing instructions at the bottom of Page 2.]**

C. [ ]  **Increase or Decrease the amount of the Line. The amount of the Line is:**

    [ ]  Increased from $ _____ to $ _____. Accordingly, the Draw Period is extended to _____.
    (Complete Only If Applicable; If Not Completed, the Draw Period Is Not Extended). (If the Account is secured by a dwelling, this increase will not be effective until (i) the Notice of Right to Cancel three business day rescission period has expired (if applicable) and/or (ii) all security documents have been satisfactorily executed and delivered to the Bank and properly recorded.)

    [ ]  Decreased from $ _____ to $ _____ . (Once the amount of the Line is decreased, it may not be increased without additional requirements being met.)

D. [ ]  **Begin Repayment Period.** The time period still remaining for the Draw Period is waived by Borrower. The Repayment Period is to begin as of the Effective Date.

E. [ ]  **REQUEST TO ISSUE ACCOUNT ACCESS CARD AND PIN ASSOCIATED WITH BORROWER'S EQUITY MAXIMIZER / EQUITY CREDITLINE℠ ACCOUNT.** Unless issuance of an Account Access Card is prohibited by law, or unless the property securing this Agreement is located in the states of Texas or New York (in which case, all references in this Agreement to an "Account Access Card" are deleted), Borrower hereby requests Bank to issue a card as described in this section, enabling Borrower to access the Credit Line/Account, and associated Personal Identification Number (PIN) to each Borrower signing the Agreement and to each Additional Borrower signing a Bank of America CreditLine Account Request To Add Additional Borrower(s) who also signs this Modification. Borrower agrees that the card will be used only as described in the Agreement and in this Modification. Borrower further agrees that the card may be issued by Bank through an arrangement Bank may have from time to time with a card issuer (the "Card Issuer"), such as Visa. All references in this Agreement to an "Account Access Card" shall mean the card or cards described in this paragraph.

There are some additional rules about how Borrower uses the Credit Line/Account:

1) **Legal Transactions.** Borrower agrees that Borrower will only use the Credit Line/Account for transactions that are legal where Borrower resides. For example, Internet gambling transactions may be illegal in Borrower's state. Display by an online merchant of either Bank's logo or a Card Issuer's logo does not mean that an Internet transaction is legal where Borrower resides. Bank will not be liable if Borrower engages in an illegal transaction.

2) **Authorizations.** Some transactions require Bank's prior authorization. For security purposes, Bank may from time to time place or change limits on the number or amounts of transactions Borrower makes in a day at ATMs or point of sale terminals. Such limitations may not be the same at every ATM or point of sale terminal. The limitations placed on a "Bank of America ATM Card" or "Bank of America Check Card" when using an ATM or point of sale terminal may not be the same as the limitations placed on an Account Access Card used at the same ATM or point of sale terminal. No such limits are placed on the number or amounts of transactions Borrower makes: at Bank's banking centers, by writing a Special Check, by conducting an Overdraft Protection transaction (subject to the ATM limits, above), or by calling Customer Service, as described in "How is the Available Line Accessed?".In addition, Bank may deny authorization for any method of accessing the Credit Line/Account if the Credit Line/Account has been suspended or terminated or if Bank suspects fraudulent activity. Bank shall not be liable for any failure to authorize a transaction for any of these reasons. However, Borrower is liable for any transaction Bank authorizes even if Bank should not have authorized it because Borrower is or would be in default as a result of the transaction.

3) **No Security Interest on Purchases.** The Agreement and this Modification do not grant Bank a security interest in purchases Borrower charges to the Credit Line/Account.

4) **Transactions With Merchants.** (a) If a merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, Borrower will be bound by that policy when Borrower uses the Credit Line/Account to buy goods or services from that merchant. (b) When using the Credit Line/Account to make travel or lodging reservations, Borrower must obtain the merchant's cancellation policy and follow it if Borrower cancels. If Borrower cancels, Borrower must obtain the cancellation number that the merchant is required to give Borrower. This merchant may charge Borrower for a cancelled transaction unless Borrower can provide Bank with a correct cancellation number. If Borrower makes reservations or purchases of any kind, such as a lodging reservation for several nights stay or a small order purchase, the Credit Line/Account may be immediately charged for the full amount of the reservation or purchase, regardless whether Borrower has received the goods or services requested at the time the Credit Line/Account is charged. (c) If Borrower authorizes a merchant to charge the Credit Line/Account for repeat transactions without the Account Access Card, then Borrower must notify the merchant when Borrower wants to discontinue the repeat transactions or if the Credit Line/Account is closed or if a new Credit Line/Account or Account Access Card number is issued by Bank. Otherwise, Borrower will be responsible to Bank for the amount of all such repeat transactions. (d) If Borrower disagrees with a transaction on Borrower's Statement or has a dispute with the merchant as a result of the transaction, Borrower will provide Bank with information or assistance Bank reasonably requests. Otherwise, Borrower will pay Bank for any resulting loss Bank has, unless Bank is prohibited by applicable law from holding Borrower liable for Bank's loss. (e) If Borrower makes a transaction in a currency other than U.S. dollars, Visa will convert the charge or credit into a U.S. dollar amount. The conversion rate will be determined using Visa currency conversion procedures that are disclosed to institutions issuing Visa cards. The conversion rate on the processing date may differ from the rate on the date of Borrower's transaction. Currently, Visa uses a currency conversion rate of either: (1) a wholesale market rate or (2) a government mandated rate, increased by 1% ("Foreign Currency Margin"). In each case, Visa uses the rate in effect one day before the conversion date. The U.S. dollar amount and the "rate" shown on the Statement for each foreign currency transaction include only the 1% retained by Visa. In the event Visa chooses to change the Foreign Currency Margin, the currency conversion rate, or the day on which the currency conversion rate is determined, then transactions on the Account/Credit Line made in a foreign currency and processed after the change may reflect the change.

5) Bank's liability, if any, for wrongful dishonor of an Advance is limited to Borrower's actual damages. Bank will not be liable if any merchant, financial institution or ATM refuses to honor the Account Access Card.

6) For an Account Access Card transaction, the date of the Advance is the date the charge against the Account Access Card is presented to Bank or Bank's agent for payment.

7) Upon termination of the Credit Line/Account, by Bank or Borrower, Borrower will immediately destroy all Account Access Cards. If Borrower is in default, Bank may request Borrower destroy all Account Access Cards.

8) Bank will not exercise any right of setoff that may be described in the Agreement.

9) Bank reserves the right not to honor any Account Access Card if any of them has been reported lost or stolen. Bank also reserves the right not to honor Special Checks that have been reported lost or stolen.

10) **Liability for Unauthorized Account Access Card Transactions.** You are not liable for unauthorized use of your Account Access Card, but notify us promptly if you believe your Account Access Card has been lost or stolen, or if you discover any unauthorized transactions. We may require you to provide a written statement regarding claims of unauthorized Account Access Card transactions.

*Visa is a registered trademark of Visa International.*

11) **Special Rule for Account Access Card Purchases.** If Borrower has a problem with the quality of goods or services that Borrower purchased with an Account Access Card, and Borrower has tried in good faith to correct the problem with the merchant, Borrower may not have to pay the remaining amount due on the goods or services. Borrower has this protection only when the purchase price was more than $50 and the purchase was made in Borrower's home state or within 100 miles of Borrower's mailing address. (If Lender owns or operates the merchant, or if Lender mailed Borrower the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

F. ☐ **Other (list):** _____

_____

_____

_____

APPEAR[S] ON THE COPY].

_____(Seal)    _____(Seal)
Borrower's Signature                    Borrower's Signature

ALAN J BANKART                          DIANE K BANKART
Borrower's Name (Print or Type)         Borrower's Name (Print or Type)

_____(Seal)    _____(Seal)
Borrower's Signature                    Borrower's Signature

ALAN J. BANKART                         Diane K. BankarT
Borrower's Name (Print or Type)         Borrower's Name (Print or Type)

## ACKNOWLEDGEMENT AND AGREEMENT OF GUARANTOR[S]

The undersigned Guarantor[s] (jointly and severally if more than one) of the Agreement acknowledge and agree under seal to all of the modifications and to all of the terms and conditions of this Modification Agreement as of the above Date and that I/we continue to be bound by the terms and conditions of the Guaranty I/we signed.

**Notice to Co-Signer (For the purpose of this Notice, the words you and your refer to any additional borrower. You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The Bank can collect this debt from you without first trying to collect from the Borrower. The Bank can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.**

_____(Seal)    _____(Seal)
Guarantor's Signature                   Guarantor's Signature

_____          _____
Guarantor's Name (Print or Type)        Guarantor's Name (Print or Type)

## Bank Information (For Bank Use Only)

Banking Center Associate **must** manually complete sections designated with an asterisk (*). Section A will prefill if performed on Merlin. Instructions in parentheses are for CCS use.

[X] **A. Block or Close:** Choose one action and one reason code only.
    [ ] Block an Account (AMN3 Change stop advance indicator to a "Y")
    [X] Block and Close at zero balance (AMN3 Change stop advance indicator to a "Y"; AML1 Change closed indicator to a "Y")

    **Stop Advance Reason Code:** Select One
    [ ] Borrower Request - C1
    [ ] Borrower Request, Verbal - C2
    [ ] Lost/ Stolen Checks, Verbal - C4
    [ ] Lost/Stolen Checks - C5
    [X] Joint Owner Request - C6
    [ ] Joint Owner Request, Verbal - C7

    [ ] Payoff Pending, - C8
    [ ] Payoff Pending, Verbal - C9
    [ ] Service Issue - CA
    [ ] Service Issue, Verbal - C9
    [ ] Sole Owner Deceased - CD
    [ ] New Offer Not Accepted - CE

[ ] **B. Unblock the Account:** (AMN3 Change stop advance indicator to an "N")
    Consumer Loan Center must approve all requests to Unblock. Send completed signed document to Consumer Loan Center for approval.

*[ ] **C./D. Increase or Decrease the Amount of the Credit Line:** Complete the amount fields with the difference between the "from" and "to" amounts indicated on the front of this form. Example: Increase from $1,000.00 to $1,500.00. Complete appropriate amount field below with $500.00.
    [ ] Increase amount $ _____ (No action needed by CCS, this will feed from CLASS)
    [ ] Decrease amount $ _____ (AM60 - tran code - 8322)

*[ ] **E. Begin Repayment Period:** Modification Effective Date _____ (AMU2 - Draw Expiration Date)

Date _____01/18/2006_____          Associate's Name _____MICHAEL J HIDENBROCK_____

Banking Center Name _____0156 EASTERN MA-DEPOSITS MA 1A_____          Associate's Phone Number _____617-434-1222_____

Concurring Associate's Name _____ Title _____ Signature _____ Date _____

To request an Unblock of an Account, fax to ACCB (835-999-0005), otherwise
Please send to: Consumer Credit Services
Only if the Account needs to be unadvanced immediately, please fax this Agreement to the numbers listed below.
Then send original to the listed address.
NC4-TOB-01-41, FAX # (336)805-3266 - NC, SC, CO, FL, MA, ND, TN, D.C., TX, NM, MO, KS, IA, AR, IL, OK, AZ, NV, OR, PA, RI, NH, CT, ME, MA, NY, NJ

Exhibit D



# Hackett Feinberg P.C.

155 Federal Street, 9th Floor
Boston, MA 02110
Tel:(617)422-0200
Fax:(617)422-0383

***This is an important notice concerning your right to live in your home.***
***Have it translated at once.***

## <u>90-Day Notice of Your Right to Cure Your Mortgage Default</u>

March 31, 2016

### <u>Via First Class and Certified Mail</u>

| | |
|---|---|
| Alan J. Bankart<br>1 Weetamo Road<br>Nantucket, MA 02554 | Diane K. Bankart<br>1 Weetamo Road<br>Nantucket, MA 02554 |

Barnes Hill, LLC
Fulchino, O'Reilly & Company, LLP
c/o Thomas P. Fulchino, Registered Agent
155 Middlesex Turnpike
Burlington, MA 01803

Alan J. Bankart
75 Barnes Hill Road
Concord, MA 01742

Diane K. Bankart
75 Barnes Hill Road
Concord, MA 01742

RE:    Loan Obligations of Alan J. Bankart, Diane K. Bankart and Barnes Hill, LLC to Bank of America Corporation
        Property: 1 Weetamo Road, Nantucket, MA 02554

Dear Mr. & Mrs. Bankart and Barnes Hill, LLC:

My office represents Bank of America Corporation ("BOA"), successor in interest to Fleet National Bank. Reference is hereby made to the following:

    (i)       a certain Fleet Line Agreement (the "Line of Credit Agreement") dated September 29, 2000 from Alan J. Bankart, Diane K. Bankart and Barnes Hill, LLC; and

    (ii)      a certain Mortgage (the "Mortgage") dated September 29, 2000 secured by property known and numbered as 1 Weetamo Road, Nantucket, Massachusetts, which was recorded with the Nantucket County Registry District of the Land Court and noted on Certificate of Title No. 19432.

BOA is the current holder of the Line of Credit Agreement and the Mortgage. You are currently in default and have breached the terms of the Line of Credit Agreement and the Mortgage because you failed to make payments of principal and interest to BOA when due.

Bankart
March 31, 2016

You have the right to cure this default by paying to BOA the total delinquency owed to it in the amount of **$301,475.38** (as of March 31, 2016) by certified or bank check. You must cure the default by **June 29, 2016**, which is at least 90 days from the date of this notice, to avoid acceleration of the sums secured by the Mortgage (i.e. making the entire principal balance of the Note plus any interest, fees and expenses due under the Note payable immediately), a foreclosure proceeding, or other action to seize your home.

To confirm the total amount owed to BOA, or, if you disagree with BOA's assertion that a default has occurred or the correctness of BOA's calculation of the total delinquency to be paid in order to cure the default, you may contact me at:

Lauren A. Solar, Esq.
Hackett Feinberg P.C.
155 Federal Street, 9th Floor, Boston, MA 02110
(617) 422-0200

Payment to BOA may be made directly to:

Grant Allred
Bank of America
Litigation Performance Manager
Bank of America Home Loans
4161 Piedmont Parkway
Greensboro, NC 27410

If you cure the default by the date specified, your account will be considered up-to-date and you can continue to make your regular monthly Mortgage.

If you do not cure the default by the date specified, BOA, as mortgagee, or anyone holding thereunder may take steps to terminate your ownership interest in the property by a foreclosure proceeding or other action to seize your home, the expense of which, including reasonable attorneys' fees, is chargeable to you.

If you do not cure the default by the date specified and BOA accelerates the sums secured by the Mortgage, you still have the right to reinstate (i.e. redeem the property) after acceleration by paying the total amounts past due before a foreclosure sale takes place. Depending on the terms of the Mortgage, there may also be other ways to avoid foreclosure, such as selling your property prior to the foreclosure sale and using the proceeds to pay off the Mortgage, refinancing the Mortgage by obtaining a new loan that would pay off the Mortgage, or voluntarily transferring ownership of your property to BOA by granting a deed in lieu of foreclosure. You also have the right to bring a court action to assert the non-existence of a default or any other defense you have to acceleration and sale.

If you pay BOA less than the total amount due in order to cure the default, be advised that this may not prevent the acceleration of the sums secured by the Mortgage and may not halt the commencement of foreclosure proceedings. Be further advised that BOA may credit the

lesser payment amount towards the amounts presently due and owing BOA.

If BOA forecloses on your home, it means BOA or a new third-party buyer will own your home and may file a summary process action in district or housing court seeking to evict you from the property.

The names of the current and former mortgage broker or mortgage loan originator for the Mortgage are unknown to BOA.

Unless you notify me in writing within 30 days after receiving this notice that you dispute the validity of the BOA total delinquency or any portion thereof, BOA will assume the total delinquency is valid. If you notify my office of your dispute in writing within 30 days after receiving this notice, I will obtain verification of the total delinquency and will mail you a copy of such verification.

You may be eligible for assistance from the Homeownership Preservation Foundation, the Massachusetts Housing Finance Agency (MassHousing), the Massachusetts Division of Banks, or other government agencies or foreclosure counseling agencies. Contact information for some of these agencies is below:

| | |
|---|---|
| Homeownership Preservation Foundation | (888) 995-HOPE |
| Massachusetts Housing Finance Agency | (800) 882-1154 |
| | (617) 854-1000 |
| | www.masshousing.com |
| Massachusetts Division of Banks | (800) 495-2265 |
| | (617) 956-1501 |
| | www.mass.gov/foreclosures |
| HUD-Approved Housing Counseling: | (800) 569-4287 |
| | (617) 994-8200 (Boston Regional Office) |
| | http://www.hud.gov/offices/hsg/sfh/hcc/fc |
| Veterans Administration: | (800) 827-1000 |
| Attorney General's HomeCorps | (617) 573-5333 |

Sincerely,

Lauren A. Solar

Please be advised that this office is attempting to collect a debt and that any information obtained will be used for that purpose.

Bankart
March 31, 2016

To the extent that you have received a discharge of this obligation in bankruptcy and if this loan was not reaffirmed in the bankruptcy case, the mortgagee is exercising its in rem rights against the property as allowed under applicable law and is not attempting any act to collect, recover or offset the discharged debt as your personal liability.

RECEIPT
7196 9000 7930 0010 6596
FROM:
    Alezandra Ortiz
    RE: BOA.Bankart
    DP:
    PB: LAS/ao
SEND TO:
    Alan J. Bankart
    1 Weetamo Road
    Nantucket MA 02554

FEES:
    Postage
    Certified Fee
    Return Receipt
    Restricted
TOTAL              $ 0

POSTMARK OR DATE

RECEIPT
7196 9000 7930 0010 6602
FROM:
    Alezandra Ortiz
    RE: BOA.Bankart
    DP:
    PB: LAS/ao
SEND TO:
    Diane K. Bankart
    1 Weetamo Road
    Nantucket MA 02554

FEES:
    Postage
    Certified Fee
    Return Receipt
    Restricted
TOTAL              $ 0.00

POSTMARK OR DATE

RECEIPT
7196 9000 7930 0010 66
FROM:
    Alezandra Ortiz
    RE: BOA.Bankart
    DP:
    PB: LAS/ao
SEND TO:
    Barnes Hill, LLC
    Fulchino, O'Reilly & Company, Li
    c/o Thomas P. Fulchino, Registe
    155 Middlesex Turnpike
    Burlington MA 01803

FEES:
    Postage
    Certified Fee
    Return Receipt
    Restricted
TOTAL              $ 0.00

POSTMARK OR DATE

RECEIPT
7196 9000 7930 0010 6626
FROM:
    Alezandra Ortiz
    RE: BOA.Bankart
    DP:
    PB: LAS/ao
SEND TO:
    Alan J. Bankart
    75 Barnes Hill Road
    Concord MA 01742

FEES:
    Postage
    Certified Fee
    Return Receipt
    Restricted
TOTAL              $ 0.00

POSTMARK OR DATE

RECEIPT
7196 9000 7930 0010 6633
FROM:
    Alezandra Ortiz
    RE: BOA.Bankart
    DP:
    PB: LAS/ao
SEND TO:
    Diane K. Bankart
    75 Barnes Hill Road
    Concord MA 01742

FEES:
    Postage
    Certified Fee
    Return Receipt
    Restricted
TOTAL              $ 0.00

POSTMARK OR DATE

4

ALEZANDRA ORTIZ
HACKETT FEINBERG P.C.
155 FEDERAL STREET
9TH FLOOR
BOSTON MA 02110

**4. Restricted Delivery?** (Extra Fee) ☐ Yes

**3. Service Type** CERTIFIED

**2. Article Number**

7196 9000 7930 0010 6602

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (☐ Addressee or ☐ Agent)
X

B. Received By: (Please Print Clearly)

C. Date of Delivery

D. Addressee's Address (If Different From Address Used by Sender)

Secondary Address / Suite / Apt. / Floor (Please Print Clearly)

Delivery Address

City                State           ZIP+4 Code

7196 9000 7930 0010 6602

**1. Article Addressed To:**

DIANE K. BANKART
1 WEETAMO ROAD
NANTUCKET MA 02554

---

ALEZANDRA ORTIZ
HACKETT FEINBERG P.C.
155 FEDERAL STREET
9TH FLOOR
BOSTON MA 02110

**4. Restricted Delivery?** (Extra Fee) ☐ Yes

**3. Service Type** CERTIFIED

**2. Article Number**

7196 9000 7930 0010 6619

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (☐ Addressee or ☐ Agent)
X

B. Received By: (Please Print Clearly)
E. Mooney

C. Date of Delivery

D. Addressee's Address (If Different From Address Used by Sender)

Secondary Address / Suite / Apt. / Floor (Please Print Clearly)

Delivery Address

City                State           ZIP+4 Code

7196 9000 7930 0010 6619

**1. Article Addressed To:**

BARNES HILL, LLC
FULCHINO, O'REILLY & COMPANY, LL
C/O THOMAS P. FULCHINO, REGISTERE
155 MIDDLESEX TURNPIKE
BURLINGTON MA 01803

---

ALEZANDRA ORTIZ
HACKETT FEINBERG P.C.
155 FEDERAL STREET
9TH FLOOR
BOSTON MA 02110

**4. Restricted Delivery?** (Extra Fee) ☐ Yes

**3. Service Type** CERTIFIED

**2. Article Number**

7196 9000 7930 0010 6596

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (☐ Addressee or ☐ Agent)
X

B. Received By: (Please Print Clearly)

C. Date of Delivery

D. Addressee's Address (If Different From Address Used by Sender)

Secondary Address / Suite / Apt. / Floor (Please Print Clearly)

Delivery Address

City                State           ZIP+4 Code

7196 9000 7930 0010 6596

**1. Article Addressed To:**

ALAN J. BANKART
1 WEETAMO ROAD
NANTUCKET MA 02554